Maple Press Company, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Marian Anderson, Respondents.

Argued October 8, 1980, before Judges CRAIG, MACPHAIL and WILLIAMS, JR., sitting as a panel of three.

*Sharon F. Harvey, Swartz, Campbell & Detweiler,* for petitioner.

*Michael J. Brillhart, Griest, Himes, Gettle, Brillhart & Herrold,* for respondents.

OPINION BY JUDGE CRAIG, November 17, 1980:

In this workmen's compensation appeal, the employer[1] questions a dismissal by the board[2] of its petition to suspend compensation, affirming a referee's decision reinstating compensation to the claimant.[3]

Claimant sustained a compensable injury on August 6, 1971 and received total disability benefits for a ruptured disc and unstable lumbar spine. On May 8, 1975, the employer filed a petition for suspension of benefits, alleging that claimant had sufficiently recovered to be able to work as of April 10, 1975 at the position of book repair person, a job different from her previous regular assignment. The referee granted a supersedeas, effective April 10, 1975.

Before the referee, claimant offered the testimony of Dr. Gailey, an orthopedic surgeon who treated claimant for her injury and performed the disc removal and fusion operation. Dr. Gailey testified to the history of claimant's problems following surgery with inflamation of the donor site and pain in the back of the legs, in addition to continued limitations in function due to the back injury. On direct examination, he stated that claimant could do just very light lifting, that bending presented problems, and that sitting or standing "after a half hour" would be "most uncomfortable." As to prognosis, he testified that all procedures had been exhausted and that "what she has is what she will retain."

---

[1] Maple Press Company.

[2] Workmen's Compensation Appeal Board.

[3] Marian Anderson.

When asked about the requirements of the book repair position. Dr. Gailey stated that it was his understanding that it would be full time and could be done either sitting or standing. He said that she could not do the "lifting and twisting" and "keeping up with the production line"; he opined that claimant was not employable in the offered position either in the past or at present.

With reference to Dr. Gailey's cross-examination, employer contends that the doctor testified that claimant could do the book repair job part-time. Fair study reveals that the doctor's opinion was, at best, conditional and not unequivocal. One passage reads:

Q. Now it [the job description] did refer to the opportunity for the woman to either sit or stand at her option?

A. Yes.

Q. With that, would that in your mind indicate it would not be necessary for your patient to sit or stand for one half hour at a clip. She could get up and down to perform the job?

A. That's right.

Q. Is that what you would recommend— the ability to move around?

A. Yes.

Q. You referred also to the possibility she would have to lie down. Do you really think that in April of 1975 this patient would have had to lie down for a significant period during the day to perform this work?

A. I really do.

After expressing a view that claimant could do the work for three-and-a-half to four hours per day, the witness added the qualification:

A. If it's as described and she could be up and down, and the conveyor wasn't throwing

too many books, too fast, she could do it three and a half to four hours but as I have seen so often, if that belt gets faster, then the job changes.

On further cross-examination, Dr. Gailey adopted qualifications to the effect that claimant could work at her own pace, lifting books every three to thirty minutes from a conveyor belt which could be turned on and off; with those conditions, the doctor stated that claimant could perform such a job part-time without harm.

Dr. Gailey also, on redirect, testified that claimant could do a job which permitted her to sit and stand alternatively. As to that view, claimant's own testimony concerning the proffered job has pertinence.

Claimant testified that she had performed the book repair job in the past, before her injury, when the other machines were broken down. She insisted that the repair person had to sit and could not stand because bending was required to reach the table. When asked if she felt she could perform the functions involved as a repair person, she testified:

A. Nope. Can't sit and can't stand on account of my legs and can't sit straight.

Q. Tell the Referee what kind of discomfort you experience on sitting. How long can you sit?

A. When I sit, my bowels . . . The nerve is hitting on my bowels and bladder and I keep going to the bathroom till I start bleeding and I can't sit. I got to lay down.

Q. How long can you remain in a seated position

A. About 25 minutes to a half hour.

Q. How about standing? Can you remain standing for any period of time?

A. 15 to 20 minutes and then the pain goes down my legs.

Q. How do you obtain relief from the discomfort and pain?

A. I lay down sometimes a couple hours a day and when I sit, I can't sit straight. I have to sit on one hip. I can't sit regular. This here where they cut here, it's coming back. They said it wouldn't come back.

. . . .

Q. Do you think you could perform even part time sedentary work?

A. No. I can't perform any kind of work because I try to do things at home and can't do it. It irritates it.

Q. Does standing and sitting alternately back and forth cause problems?

A. Yes, Laying is the only thing that helps my pain, but you can't lay all the time. That's why I get up.

Employer offered testimony by Dr. Malina, a neurologist who had also treated claimant. He felt claimant could perform the job for at least six hours a day without further damage to her spine. A representative of employer testified as to the facilities available and functions of the job, and employer's willingness to tailor the requirements of the position to claimant's physical capabilities.

The referee denied employer's petition and found that the employer had not met its burden of proving claimant's capacity to work; that claimant continued to suffer a great deal of pain from the injury and operations required by it; that claimant's testimony was "highly credible"; that claimant remained disabled; and that the job offered claimant by the employer was not within her physical restrictions and could not be performed either on a part or full-time basis.

On appeal, the board affirmed the referee, finding the issue to be one of credibility and therefore solely within the discretion of the referee, citing *George v. Workmen's Compensation Appeal Board,* 39 Pa. Commonwealth Ct. 16, 394 A.2d 1080 (1978) as controlling.

The issue is whether the referee capriciously disregarded competent medical evidence in basing his findings primarily on the claimant's testimony, despite conflicting evidence from the testimony of her own medical witness.

The facts in *George, supra,* are close to those of this case. Claimant had suffered a compensable injury to his back, for which he received benefits. The employer filed a suspension petition alleging claimant's ability to resume employment. At the hearing, the claimant testified that he continued to suffer discomfort, pain, and loss of sensation. Claimant's treating physician, as a witness for the employer, testified that the claimant could return to work. The referee held that employer had failed to sustain its burden of proving ability to work.

On appeal the board reversed, without taking additional evidence, finding that the referee had disregarded competent evidence. We reversed the board, holding that the referee had properly exercised his judgment on the issue of credibility of the witnesses and that he did not capriciously disregard competent evidence in preferring claimant's testimony over medical testimony, even where that testimony was from a treating physician.

Thus *George, supra,* is controlling authority for the proposition that finding claimant's testimony to be more persuasive than her treating physician's testimony is within the province of the referee. Here, however, employer argues that the referee capriciously disregarded competent evidence when he preferred claimant's testimony over the testimony of a treating physician offered by her as medical witness.

The referee's discretion in weighing credibility is not limited by the characterization of medical witnesses according to the party for whom they testify. The well-recognized rule of *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977), is that "the referee may, in the lawful exercise of his broad discretion, accept of reject the testimony of *any* witness in whole or in part." (Emphasis added.)

The record presents Dr. Gailey's testimony as not wholly inconsistent with claimant's; only after a series of qualified questions on cross-examination did Dr. Gailey indicate that claimant may have been able to resume limited duties. Against this evidence the referee weighed claimant's testimony that she was familiar with the job—having performed it in the past—and that her physical condition precluded her from accepting the position. The referee's finding that claimant's testimony was "highly credible" was an exercise of discretion that cannot be disturbed.

In *Minadeo v. Workmen's Compensation Appeal Board,* 43 Pa. Commonwealth Ct. 412, 402 A.2d 712 (1979), we affirmed a referee's finding that disability had ceased, where claimant offered the testimony of three medical witnesses and the referee chose to believe the conclusions of one over the contradictory assertions of the others.

Findings supported by the testimony, even though there is contrary evidence, must be affirmed if the testimony accepted by the referee "constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *American Refrigerator, supra,* at 595, 377 A.2d at 1010. Obviously, the referee could have been impressed with the claimant's familiarity with the specific job, as compared to the doctor's secondhand knowledge.

Moreover, the burden to be surmounted was upon the employer, not the claimant.

Hence, we cannot conclude that the referee capriciously disregarded competent evidence in deciding that employer failed to carry its burden of proving claimant's capacity to work.

Accordingly, we will affirm the order of the board, revising it only to correct interest rate.[4]

ORDER

AND Now, this 17th day of November, 1980, the order of the Workmen's Compensation Appeal Board, dated February 7, 1980, No. A-74545, is affirmed. Accordingly, it is ordered that judgment be entered in favor of claimant Marian Anderson, and against Maple Press Company and its insurer Fireman's Fund American Insurance Co., in accordance with the compensation agreement dated November 8, 1971, which is reinstated.

All deferred payments of compensation shall bear interest at the rate of 10% per annum.

Maple Press Company, through its insurer, is ordered to pay to Dr. Herman Gailey $75.00 for his appearance and testimony on October 28, 1975.

Maple Press Company and its insurer are ordered to pay a sum equivalent to 20% of the first draft payable to claimant making the claimant's compensation payments current; said counsel fees are to be deducted

---

[4] The referee and the board erred in computing interest at the rate of 6% per annum, because Section 406.1 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, added by Section 3 of the Act of February 8, 1972, P.L. 25, 77 P.S. §717.1, effective April 10, 1972, calls for the computation of interest at the rate of 10% per annum. *See A. P. Green Refractories Co. v. Workmen's Compensation Appeal Board*, 44 Pa. Commonwealth Ct. 1, 403 A.2d 172 (1979) ; *Workmen's Compensation Appeal Board v. Branch Motor Express*, 18 Pa. Commonwealth Ct. 262, 334 A.2d 847 (1975).

from compensation payable to claimant and sent directly to Michael J. Brillhart, Esquire, claimant's counsel, as an approved fee for his representation of her in these proceedings.